Roman Catholic Diocese of Brooklyn, N.Y. v Christ the King Regional High Sch. (2018 NY Slip Op 06130)





Roman Catholic Diocese of Brooklyn, N.Y. v Christ the King Regional High Sch.


2018 NY Slip Op 06130


Decided on September 19, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 19, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
SHERI S. ROMAN
BETSY BARROS
ANGELA G. IANNACCI, JJ.


2017-03229
2017-10799
 (Index No. 704996/13)

[*1]Roman Catholic Diocese of Brooklyn, New York, respondent, 
v
Christ the King Regional High School, appellant.


Belkin Burden Wenig & Goldman, LLP, New York, NY (Sherwin Belkin, Joseph Burden, Magda L. Cruz, and David R. Brand of counsel), for appellant.
Cullen and Dykman LLP, New York, NY (Cynthia Boyer Okrent of counsel), for respondent.



DECISION & ORDER
In an action, inter alia, for a judgment declaring the parties' respective rights under an agreement dated August 31, 1976, the defendant appeals from (1) an order of the Supreme Court, Queens County (Marguerite A. Grays, J.), entered March 22, 2017, and (2) an order of the same court entered September 6, 2017. The order entered March 22, 2017, insofar as appealed from, granted that branch of the plaintiff's motion which was for summary judgment on the second cause of action. The order entered September 6, 2017, insofar as appealed from, upon renewal, adhered to the determination in the order entered March 22, 2017, and denied that branch of the defendant's motion which was to stay enforcement of the order entered March 22, 2017, pending determination of the defendant's appeal from that order.
ORDERED that the order entered March 22, 2017, is reversed insofar as appealed from, on the law, that branch of the plaintiff's motion which was for summary judgment on the second cause of action is denied, and so much of the order entered September 6, 2017, as, upon renewal, adhered to the determination in the order entered March 22, 2017, granting that branch of the plaintiff's motion is vacated; and it is further,
ORDERED that the appeal from so much of the order entered September 6, 2017, as, upon renewal, adhered to the determination in the order entered March 22, 2017, granting that branch of the plaintiff's motion which was for summary judgment on the second cause of action is dismissed as academic in light of our determination on the appeal from the order entered March 22, 2017; and it is further,
ORDERED that the appeal from so much of the order entered September 6, 2017, as denied that branch of the defendant's motion which was to stay enforcement of the order entered March 22, 2017, is dismissed as academic in light of this Court's decision and order on motion dated October 23, 2017, staying enforcement of the order entered March 22, 2017, pending hearing and determination of these appeals; and it is further,
ORDERED that one bill of costs is awarded to the defendant.
In an agreement dated August 31, 1976 (hereinafter the 1976 Agreement), the plaintiff, the Roman Catholic Diocese of Brooklyn, New York (hereinafter the Diocese), agreed to convey title to a parcel of property in Middle Village to the defendant, Christ the King Regional High School (hereinafter CTK), "to have and to hold the same so long as [CTK] continues the operation of a Roman Catholic high school upon the premises . . . , upon the cessation of which all rights, title and interest herein conveyed shall revert to the [Diocese]" (see Roman Catholic Diocese of Brooklyn, N.Y. v Christ the King Regional High Sch., 149 AD3d 994, 995). Further, the parties agreed that CTK "shall maintain and operate a Catholic high school in and upon the entire premises herein described and shall use the same for no other purpose not customarily or usually associated with such use," and that "[i]n the event [CTK] shall, for any reason, cease so to operate said high school, title to the premises . . . shall automatically revert to the [Diocese] without further action on its part" (see id. at 995).
Beginning in 2002, CTK leased a portion of the premises to Christ the King Continuing Education, Inc. (hereinafter CTKCE), which used the leased portion to operate a daycare and continuing education programs. In 2010, CTKCE leased an additional portion of the premises from CTK and, in 2013, CTKCE sublet the additional space to Middle Village Preparatory Charter School for use as a licensed charter middle school.
In November 2013, the Diocese commenced this action seeking, in the first cause of action, a judgment declaring that the 1976 Agreement contained a valid and enforceable covenant requiring CTK to reconvey the property to the Diocese in the event that CTK ceased to operate a Catholic high school on the premises (see id.). The second cause of action, in effect, sought a judgment declaring that the 1976 Agreement contained a valid and enforceable covenant prohibiting CTK from using any portion of the property for another purpose, as well as damages for breach of contract (see id.). CTK moved pursuant to CPLR 3211(a) to dismiss the complaint. The Supreme Court granted that branch of CTK's motion which was, in effect, for a judgment declaring that the reverter provision had been extinguished, but denied that branch of CTK's motion which was to dismiss the second cause of action (see id.).
The Diocese conceded that it failed to comply with the recording requirements for any "condition subsequent or special limitation restricting the use of land and the right of entry or possibility of reverter created thereby" (Real Property Law § 345[1]) and, on a prior appeal, this Court determined, inter alia, that, as a consequence, the reverter provision had been extinguished (see Roman Catholic Diocese of Brooklyn, N.Y. v Christ the King Regional High Sch., 149 AD3d at 996). However, this Court found that the extinguished reverter clause was distinct from the provision of the 1976 Agreement prohibiting CTK from using the property for any purpose other than the operation of a Catholic high school and that, accordingly, the Diocese's second cause of action alleging breach of contract remained viable (see id.).
While that appeal was pending before this Court, the Diocese moved in the Supreme Court, inter alia, for summary judgment on the second cause of action alleging breach of contract. In an order entered March 22, 2017, the court granted that branch of the motion. The court determined that the use of part of CTK's premises for a charter school constituted a breach of the 1976 Agreement, and enjoined CTK from "continuing the use of part of its premises for a charter school without the permission of the Diocese" as of the conclusion of the 2016-2017 academic year. On April 19, 2017, this Court issued its determination on the prior appeal (see id. at 994).
In May 2017, CTK moved, inter alia, for leave to renew its opposition to that branch of the Diocese's motion which was for summary judgment on its second cause of action, relying in part on this Court's conclusion that questions of fact remained regarding CTK's defenses of waiver and estoppel (see id. at 997). In an order entered September 6, 2017, the Supreme Court granted leave to renew and, upon renewal, adhered to its prior determination. CTK appeals from the orders entered March 22, 2017, and September 6, 2017.
"[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (Greenfield v Philles Records, 98 NY2d 562, 569; see Beardslee v Inflection Energy, LLC, 25 NY3d 150, 157; NML Capital v Republic of Argentina, 17 NY3d 250, 259; St. John's Univ., N.Y. v Butler Rogers Baskett Architects, P.C., 92 AD3d 761, 765). Thus, "[i]t is the role of the courts to enforce the agreement made by the parties—not to add, excise or distort the meaning of the terms they chose to include, thereby creating a new contract under the guise of construction" (NML Capital v Republic of Argentina, 17 NY3d at 259-260; see Beardslee v Inflection Energy, LLC, 25 NY3d at 157; Riverside S. Planning Corp. v CRP/Extell Riverside, L.P., 13 NY3d 398, 404; Greenfield v Philles Records, 98 NY2d at 569-570). Likewise, a contract should not be read so as to render any term, phrase, or provision meaningless or superfluous (see God's Battalion of Prayer Pentecostal Church, Inc. v Miele Assoc., LLP, 6 NY3d 371, 374; Lawyers' Fund for Client Protection of State of N.Y. v Bank Leumi Trust Co. of N.Y., 94 NY2d 398, 404; Two Guys from Harrison-N.Y. v S.F.R. Realty Assoc., 63 NY2d 396, 403).
"A contract is unambiguous if the language it uses has a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion'" (Greenfield v Philles Records, 98 NY2d at 569, quoting Breed v Insurance Co. of N. Am., 46 NY2d 351, 355). Whether a contract is ambiguous is a question of law for the courts (see Riverside S. Planning Corp. v CRP/Extell Riverside, L.P., 13 NY3d at 404; Bailey v Fish & Neave, 8 NY3d 523, 528; Greenfield v Philles Records, 98 NY2d at 569; W.W.W. Assoc. v Giancontieri, 77 NY2d 157, 162).
Here, in opposition to the Diocese's prima facie showing of entitlement to judgment as a matter of law on the second cause of action, CTK raised a triable issue of fact. It cannot be said that the language of the 1976 Agreement requiring CTK to "maintain and operate a Catholic high school in and upon the entire premises herein described and . . . use the same for no other purpose not customarily or usually associated with such use" has " a definite and precise meaning, unattended by danger of misconception in the purport of the [agreement] itself, and concerning which there is no reasonable basis for a difference of opinion,'" particularly given the time that has passed and the changes in circumstances since the negotiation of the 1976 Agreement (Greenfield v Philles Records, 98 NY2d at 569, quoting Breed v Insurance Co. of N. Am., 46 NY2d at 355; cf. Brad H. v City of New York, 17 NY3d 180, 186). CTK came forward with evidence of other instances where unused or underused portions of Catholic schools were rented to charter schools, raising a triable issue of fact as to whether such a use is customarily and usually associated with the operation of a Catholic school under the budgetary and enrollment constraints currently facing schools within the Diocese. Accordingly, the Supreme Court should not have granted that branch of the Diocese's motion which was for summary judgment on the second cause of action alleging breach of contract.
In light of our determination, we need not reach CTK's remaining contentions.
MASTRO, J.P., ROMAN, BARROS and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court