Bisimwa v St. John Fisher Coll. (2021 NY Slip Op 02962)





Bisimwa v St. John Fisher Coll.


2021 NY Slip Op 02962


Decided on May 7, 2021


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on May 7, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., PERADOTTO, CURRAN, BANNISTER, AND DEJOSEPH, JJ.


1093 CA 20-00364

[*1]FRANCK BISIMWA, PLAINTIFF-RESPONDENT,
v
ST. JOHN FISHER COLLEGE, TERRI L. TRAVAGLINI, IN HER OFFICIAL CAPACITY AS ASSISTANT DEAN OF STUDENTS AT ST. JOHN FISHER COLLEGE AND TERRI L. TRAVAGLINI, INDIVIDUALLY, DEFENDANTS-APPELLANTS. 






WARD GREENBERG HELLER & REIDY LLP, ROCHESTER (JOSHUA M. AGINS OF COUNSEL), FOR DEFENDANTS-APPELLANTS. 
COUCH WHITE, LLP, ALBANY (ELIZABETH L. CALLAHAN OF COUNSEL), AND THE LAW OFFICE OF ROBERT KING, PLLC, ROCHESTER, FOR PLAINTIFF-RESPONDENT.


 Appeal from an order of the Supreme Court, Monroe County (J. Scott Odorisi, J.), entered November 20, 2019. The order granted in part and denied in part the motion of defendants to dismiss the complaint. 
It is hereby ORDERED that the order so appealed from is unanimously modified on the law by granting those parts of the motion seeking to dismiss the first and second causes of action against defendant Terri L. Travaglini, to dismiss the third cause of action in its entirety, and to dismiss the claim for punitive damages, and as modified the order is affirmed without costs.
Memorandum: Plaintiff, while enrolled as a freshman at defendant St. John Fisher College (College), was found responsible following a student conduct hearing for several violations of the College's student code of conduct, including sexual misconduct and assault, arising from a sexual encounter with another student. As a result, he was expelled. Although plaintiff was also later criminally prosecuted on charges of rape in the first and third degrees, a jury found him not guilty of those alleged crimes. Plaintiff and the College thereafter entered into a settlement and release agreement in which each party agreed to various terms to resolve any disputes between them. While neither party admitted any wrongdoing and plaintiff remained expelled, the College acknowledged that if new evidence, including the trial testimony of several witnesses, had been available during the student conduct hearing, a different result may have been reached in the disciplinary proceeding. Among other terms, the College agreed to expunge the notation of disciplinary action and sanctions from plaintiff's transcript and to expunge references to disciplinary action from any other records of the College made available to third parties.
Plaintiff subsequently commenced this action against the College and defendant Terri L. Travaglini, individually and in her official capacity as Assistant Dean of Students at St. John Fisher College, alleging causes of action for, inter alia, breach of contract and defamation. In relevant part, plaintiff alleged that defendants breached the agreement and defamed him when, in response to his authorizations for the release of information as part of his applications to the University at Buffalo (UB) and SUNY Buffalo State College (Buffalo State), Travaglini disclosed to those educational institutions information regarding the finding of responsibility against plaintiff for his violations of the student code of conduct and his resulting expulsion. Defendants now appeal from an order insofar as it denied that part of their pre-answer motion seeking dismissal of the first and second causes of action, alleging breach of contract, and the third cause of action, alleging defamation, to the extent it is based on the disclosure to Buffalo State.
Defendants contend that Supreme Court erred in denying that part of their motion seeking to dismiss the breach of contract causes of action against Travaglini for failure to state a cause of action (see CPLR 3211 [a] [7]) because she is not a party to the agreement. We agree, and we therefore modify the order accordingly. Here, plaintiff failed to state a cause of action alleging breach of contract against Travaglini individually because she is not a party to the agreement, which is exclusively between plaintiff and the College (see Itzkowitz v Ginsburg, 186 AD3d 579, 581 [2d Dept 2020]; Environmental Appraisers & Bldrs., LLC v Imhof, 143 AD3d 756, 757 [2d Dept 2016]). To the extent that plaintiff alleged that Travaglini was liable in her official capacity as Assistant Dean of Students, he effectively alleged that Travaglini acted as an agent on behalf of the College (see Environmental Appraisers & Bldrs., LLC, 143 AD3d at 757-758). " 'When an agent acts on behalf of a disclosed principal, the agent will not be personally liable for a breach of contract unless there is clear and explicit evidence of the agent's intention to be personally bound' " (Simmons v Washing Equip. Tech., 51 AD3d 1390, 1392 [4th Dept 2008]; see Salzman Sign Co. v Beck, 10 NY2d 63, 67 [1961]). Plaintiff did not allege that Travaglini intended to be personally bound (see Environmental Appraisers & Bldrs., LLC, 143 AD3d at 757-758; Simmons, 51 AD3d at 1392).
We nonetheless reject defendants' further contention that the court erred in denying that part of their motion seeking to dismiss the breach of contract causes of action against the College based on documentary evidence (see CPLR 3211 [a] [1]). "When a court rules on a CPLR 3211 motion to dismiss, it 'must accept as true the facts as alleged in the complaint and submissions in opposition to the motion, accord plaintiff[] the benefit of every possible favorable inference and determine only whether the facts as alleged fit within any cognizable legal theory' " (Whitebox Concentrated Convertible Arbitrage Partners, L.P. v Superior Well Servs., Inc., 20 NY3d 59, 63 [2012]). "The motion may be granted if 'documentary evidence utterly refutes [the] plaintiff's factual allegations' . . . , thereby 'conclusively establishing a defense as a matter of law' " (id.). "One example of such proof is an unambiguous contract that indisputably undermines the asserted causes of action" (id.). In that regard, "[a] written agreement that is clear, complete and subject to only one reasonable interpretation must be enforced according to the plain meaning of the language chosen by the contracting parties" (Brad H. v City of New York, 17 NY3d 180, 185 [2011]). In construing an agreement, "language should not be read in isolation" (id.); rather, it " 'must be read as a whole to give effect and meaning to every term' " (Maven Tech., LLC v Vasile, 147 AD3d 1377, 1378 [4th Dept 2017]; see Paramax Corp. v VoIP Supply, LLC, 175 AD3d 939, 941-942 [4th Dept 2019]).
Here, upon reading the agreement as a whole to give effect and meaning to every term, we conclude that there is no merit to defendants' contention that the agreement permitted the disclosure of plaintiff's non-expunged disciplinary history to third parties such as other educational institutions. The first relevant paragraph of the agreement, which defendants ignore in presenting their argument, prohibited the parties from communicating any defamatory or disparaging statements to third parties but left undisturbed the College's "right to perform any action in its normal course of business, including without limit disclosing any student conduct history other than violations found at the Student Conduct Hearing" (emphasis added). The agreement thus clearly contemplated that the College's right to disclose plaintiff's disciplinary history was circumscribed to the extent that the College could not, as it might normally do in the course of its business, disclose violations found during the subject student conduct hearing against plaintiff. That reading is reinforced by the second relevant paragraph, which indicated that the College agreed to expunge the notation of disciplinary action and sanctions from plaintiff's transcript and, in addition, provided that "references to any disciplinary action shall be expunged from any other [College] records that are made available to third parties." Taken together, the relevant paragraphs provide that, whatever was disclosed by the College to third parties, it would not include any reference to the disciplinary action taken against plaintiff as a result of the subject incident.
Defendants nonetheless contend that the final sentence of the second relevant paragraph, which allowed the College to retain records of the underlying disciplinary proceeding, permitted the disclosure of the finding of responsibility against plaintiff. That contention also lacks merit. The final sentence stated that the College "shall retain records of the underlying disciplinary proceedings consistent with its record retention protocols generally applicable to records of such proceedings, which shall be treated as confidential student records under applicable law and [College] policies." As plaintiff correctly contends, the final sentence allowed the College to [*2]retain for its own internal record-keeping purposes the record of the underlying disciplinary proceeding and provided that, for purposes of such retention, the record would be treated as confidential. But retention of records by the College is decidedly different from disclosure thereof to third parties, and the final sentence is preceded by one unambiguously stating that references to any disciplinary action would be expunged from any records that the College made available to third parties. Thus, contrary to defendants' assertion, even if an "applicable law" permitted disclosure such that there would be no violation of that law, the agreement here barred disclosure of any non-expunged disciplinary history.
We further conclude that the additional documentary evidence submitted by defendants in support of their motion to dismiss, i.e., the authorizations for release of information executed by plaintiff, does not establish as a matter of law that plaintiff abandoned his contractual rights under the agreement (see Town of Mexico v County of Oswego, 175 AD3d 876, 877-878 [4th Dept 2019]). It is well established that "[c]ontractual rights may be waived if they are knowingly, voluntarily and intentionally abandoned" (Fundamental Portfolio Advisors, Inc. v Tocqueville Asset Mgt., L.P., 7 NY3d 96, 104 [2006]). "Such abandonment 'may be established by affirmative conduct or by failure to act so as to evince an intent not to claim a purported advantage' " (id.). "However, waiver 'should not be lightly presumed' and must be based on 'a clear manifestation of intent' to relinquish a contractual protection" (id.). "Generally, the existence of an intent to forgo such a right is a question of fact" (id.).
Here, the documentary evidence shows that plaintiff authorized the College to disclose to UB "[i]nformation in [his] student conduct record" about the subject incident and to Buffalo State "any and all information regarding [him], however personal and confidential it may appear to be, including copies of any and all records and reports, contained in the files of [the College] . . . for the purpose of determining [his] suitability for possible admission." As alleged in the complaint, however, plaintiff executed those authorizations for the release of information to UB and Buffalo State on the understanding that, consistent with the agreement, the information disclosed by the College would not include any references to disciplinary action related to the subject incident. In other words, under the facts as alleged in the complaint, which we must accept as true, plaintiff's intent in executing the authorizations was not to waive his contractual rights but rather to have the College release any pertinent information it may have possessed other than references to the disciplinary action arising from the subject incident. To the extent that the plaintiff's authorizations and his additional preemptive disclosure to Buffalo State suggest otherwise, the complaint further alleged that plaintiff contemplated that the College would simply "confirm the statements that [he] had made" preemptively, i.e., that he had been "accused of a crime he did not commit" and was "found innocent by a jury after trial." In light of those allegations, any intent by plaintiff to forgo his contractual right of nondisclosure—which should not be lightly presumed and is generally a question of fact (see Fundamental Portfolio Advisors, Inc., 7 NY3d at 104)—cannot be determined at this stage in the litigation (see Town of Mexico, 175 AD3d at 877-878). We therefore conclude that the documentary evidence submitted in support of defendants' motion to dismiss failed to "utterly refute[] plaintiff's factual allegations" and thus did not "conclusively establish[ ] a defense as a matter of law" (Goshen v Mutual Life Ins. Co. of N.Y., 98 NY2d 314, 326 [2002]; see Town of Mexico, 175 AD3d at 878).
Defendants also contend that the court erred in denying that part of their motion seeking to dismiss the defamation cause of action to the extent that it is based on the disclosure to Buffalo State. We agree, and we therefore further modify the order accordingly. "Where a plaintiff alleges that statements are false and defamatory, the legal question for the court on a motion to dismiss is whether the contested statements are reasonably susceptible of a defamatory connotation" (Armstrong v Simon & Schuster, Inc., 85 NY2d 373, 380 [1995]). It is undisputed here that the information disclosed to Buffalo State was not false in and of itself; rather, as the parties and the court recognized, plaintiff's theory is defamation by implication based on omissions from the disclosure to Buffalo State and the alleged false suggestions or implications arising therefrom.
" 'Defamation by implication' is premised not on direct statements but on false suggestions, impressions and implications arising from otherwise truthful statements" (id. at 380-381). We now join the other Departments in adopting the heightened legal standard for a claim of defamation by implication (see Partridge v State of New York, 173 AD3d 86, 91 [3d Dept 2019]; Udell v NYP Holdings, Inc., 169 AD3d 954, 957 [2d Dept 2019]; Stepanov v Dow [*3]Jones & Co., Inc., 120 AD3d 28, 37-38 [1st Dept 2014]). Under that standard, "[t]o survive a motion to dismiss a claim for defamation by implication where the factual statements at issue are substantially true, the plaintiff must make a rigorous showing that the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference" (Stepanov, 120 AD3d at 37-38; see Partridge, 173 AD3d at 91; Udell, 169 AD3d at 957). We reject plaintiff's contention that the heightened standard is limited to cases involving the press or the media. Although the rationale for adopting the heightened standard includes achieving balance between "a plaintiff's right to recover in tort for statements that defame by implication and a defendant's First Amendment protection for publishing substantially truthful statements" (Stepanov, 120 AD3d at 38), the rationale is not limited to First Amendment considerations and instead also includes fairness to a declarant who intended or endorsed only the true meaning of the subject statement (see Partridge, 173 AD3d at 91).
Here, a reasonable reading of the substantially true disclosure to Buffalo State of plaintiff's violations of the student code of conduct and expulsion from the College does not imply that plaintiff is "a rapist" as plaintiff alleged in his complaint or "a convicted rapist" as plaintiff's counsel asserted in opposition to the motion to dismiss. The disclosure that plaintiff was found responsible in a student disciplinary proceeding for sexual misconduct and assault as defined in a student code of conduct does not imply that there was a criminal proceeding, let alone that the result of any such criminal proceeding was a conviction for rape as defined by the Penal Law. We thus conclude that "there is no reasonable reading of th[e] true fact[s in the disclosure to Buffalo State] that can lend itself to a defamatory implication" that plaintiff is a convicted rapist (Stepanov, 120 AD3d at 39).
Plaintiff nonetheless further contends that the disclosure falsely suggested that he had, in fact, committed the acts of which he was accused, despite the new evidence and record expungement as set forth in the agreement. Even assuming, arguendo, that plaintiff pleaded this theory, we conclude that the omission of the terms of the agreement did not impart any false inference. Plaintiff was found responsible for violations of the student code of conduct and was expelled, which the College truthfully disclosed to Buffalo State, and while the College acknowledged in the agreement that new evidence may have resulted in a different result at the student conduct hearing, the College did not admit that plaintiff was not responsible for the violations and did not reverse plaintiff's expulsion. As defendants contend, although plaintiff may wish that additional information from the College would have provided further context for the truthful information that was conveyed, the disclosure to Buffalo State did not imply anything false about plaintiff (see Martin v Hearst Corp., 777 F3d 546, 553 [2d Cir 2015], cert denied 577 US 816 [2015]; Stepanov, 120 AD3d at 39-40; cf. Partridge, 173 AD3d at 94).
Finally, we agree with defendants that, in the absence of the remaining defamation claim and with only the breach of contract causes of action surviving, plaintiff's claim for punitive damages should be dismissed. We therefore further modify the order accordingly. "As a general rule, '[p]unitive damages are not recoverable in a breach of contract action in which no public rights are alleged to be involved' . . . because the purpose of punitive damages 'is not to remedy private wrongs but to vindicate public rights' " (City of Buffalo City Sch. Dist. v LPCiminelli, Inc., 159 AD3d 1468, 1471 [4th Dept 2018]; see Rocanova v Equitable Life Assur. Socy. of U.S., 83 NY2d 603, 613 [1994]). Here, the breach of contract causes of action do not seek to vindicate public rights; rather, they involve allegations of an ordinary breach of contract between a private university and former student (see City of Buffalo City Sch. Dist., 159 AD3d at 1471).
Entered: May 7, 2021
Mark W. Bennett
Clerk of the Court